UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **REGIONS BANK,** | ) |
| Plaintiff, | ) |
| v. | ) CASE NO. _____ |
| **CURT D. JONES,** | ) |
| **FISCHER VENTURES, LLC,** | ) |
| **MARK A. FISCHER, and** | ) |
| **DIPPIN' DOTS FRANCHISING, INC.,** | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF
MOTION OF REGIONS BANK FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION AGAINST DEFENDANTS
CURT D. JONES, FISCHER VENTURES, LLC, MARK A. FISCHER,
DIPPIN' DOTS FRANCHISING, INC., AND THEIR AGENTS**

Plaintiff Regions Bank ("Regions") submits this *Memorandum in Support of Motion of Regions Bank for Temporary Restraining Order and Preliminary Injunction Against Defendants Curt D. Jones, Fischer Ventures, LLC, Mark A. Fischer, and Dippin' Dots Franchising, Inc., and Their Agents*.

### I. STATEMENT OF FACTS

1. On November 14, 2011, Regions obtained an *Agreed Judgment* against Curt D. Jones, Kay A. Jones, and Quo Vadis I, Inc. for $249,048.07 in the United States District Court for the Western District of Kentucky, Civil Action No. 5:10-cv-114-M ("Judgment"), a true and correct copy of which is attached as ***Exhibit 1*** to the Verified Complaint filed in this action.

2. On January 5, 2012, the Judgment was registered in the United States District Court for the Middle District of Tennessee.

3. As part of their collection efforts, counsel for Regions issued a *subpoena duces tecum* ("Subpoena") and caused it to be served on Mr. Jones on February 8, 2012. A true and

correct copy of the Subpoena is attached as Exhibit A to the transcript of the Deposition of Curt D. Jones. The Subpoena required Mr. Jones to appear at the offices of Stites & Harbison PLLC on February 23, 2012, and to bring with him any and all documents consisting of or relating to his ownership of stock in Dippin' Dots Franchising, Inc. ("DDF," with the shares of DDF the "DDF Stock"), including any original certificated securities. On February 23, 2012, Mr. Jones appeared at the offices of Stites & Harbison PLLC and testified under oath, and a true and correct copy of the transcript is attached as ***Exhibit 2*** ("Jones Depo.") to the Verified Complaint file in this action.

4. As part of their collection efforts, counsel for Regions caused a Writ of Execution to issue on the DDF Stock, a true and correct copy of which is attached hereto as ***Exhibit 3*** to the Verified Complaint filed in this action.

5. On the eve of the deposition, with knowledge that he was required by the Subpoena to bring the original certificated securities to the deposition, Mr. Jones entered into a *Sale of Stock Agreement* ("Stock Sale Contract"), a true and correct copy of which is attached as Exhibit B to the Jones Depo.

6. Under the Stock Sale Contract, Mr. Jones, who owned 100% of the DDF Stock, agreed to sell 51% of the DDF Stock to Fischer Ventures, LLC ("FV") for $250,000 (the "Transfer"). (Jones Depo. 19: 3-6.)

7. On the day before the deposition, Mr. Jones shipped the original stock certificate ("Certificate") for 100 shares, which constituted all issued shares of DDF Stock, to his attorney Mark Johnson in Cape Girardeau, Missouri, on his attorney's advice, thereby violating the Subpoena. (Jones Depo. 15: 16-25, 16: 1-7.)

8. The Stock Sale Contract was put together in large part by Mr. Jones and his attorneys Mark Johnson and Todd Stockwell, with participation from FV, all of whom, on information and belief, had knowledge of the Judgment and/or the Subpoena. (Jones Depo. 13: 12-21, 43: 7-15.)

9. Some of the terms of the Stock Sale Contract and the mechanics of sale are as follows:

(a) FV pays $250,000.00 for a controlling 51% interest (Stock Sale Contract ¶1.1.) in DDF by making a $250,000.00 wire transfer to a DDF account at BB&T. This money is then used to pay part of an alleged debt owed by Mr. Jones to DDF, and then transferred by DDF to Dippin' Dots, Inc. ("DDI"), to pay off an alleged debt owed by DDF to DDI, thereby keeping it at all times out of the reach of Regions;

(b) On February 22, 2012, on the advice of his attorney Mark Johnson, Mr. Jones sent the Certificate by overnight delivery to Mr. Johnson, to be followed by the issuance of new certificates for the DDF stock, with 51% going to FV and 49% going to Mr. Jones, thereby divesting Mr. Jones of a controlling interest and keeping the Certificate at all times out of the reach of Regions (Stock Sale Contract ¶3.4.);

(c) FV agrees that for a period of at least 90 days from the Effective Date (as defined in the Stock Sale Contract) of the transfer, Mr. Jones retains his position as "Director of Franchising" of DDF and continues to receive a salary of $300,000.00 per year (Stock Sale Contract ¶4.1);

(d) For that same 90-day period, FV cannot remove the officers and/or directors controlling the operations of DDF – including Mr. Jones - for any reason whatsoever (Stock Sale Contract ¶4.1.);

(e) For a period of six months from the Effective Date (as defined in the Stock Sale Contract) of the Transfer, Mr. Jones has the first right of refusal to repurchase the shares he transfers to FV (Stock Sale Contract ¶5.); and

(f) If Mr. Jones's remaining 49% interest is subject to involuntary transfer, *e.g.*, to execution by Regions, then FV has the right to buy those shares as well for the sum of $240,196.00 (Stock Sale Contract ¶6).

10. Mr. Jones accepted FV's first offer without any counteroffer. (Jones Depo. 23: 11-20.)

11. Mr. Jones, prior to being served with the Subpoena, had been in negotiations with a Brazilian investor, Mr. Lancas, to sell a 51% interest in DDF for over $1 million dollars. (Jones Depo. 24: 1-18.)

12. Mr. Jones was insolvent when the Transfer occurred. Mr. Jones has multiple creditors, and he is not paying his debts as they come due, creating the presumption of insolvency. Those creditors include Regions, SunTrust Bank, and an Illinois municipality. (Jones Depo. 37: 5, 41: 3.)

13. Mr. Jones has admitted that he has discussed with his attorneys the fraudulent transfer law and what it means to hinder, delay, and defraud a creditor. (Jones Depo. 28: 19-25.)

14. When asked pointedly whether he undertook the Transfer to defraud his creditors, Mr. Jones refused to answer. (Jones Depo. 43: 13-25, 44: 1-5.

15. The Transfer includes multiple "badges of fraud" under T.C.A. § 66-3-305 including, without limitation, the following:

(a) Mr. Jones retained a degree of control or possession over the DDF Stock he sold even after the Transfer;

(b) Mr. Jones retained a degree of control over DDF even after transferring his controlling interest therein;

(c) Before the Transfer, Regions sued Mr. Jones, obtained the Judgment, and was in the process of collecting it;

(d) Mr. Jones was insolvent at the time of the Transfer;

(e) Mr. Jones has removed or concealed the shares by sending the Certificate to his attorney on the eve of the deposition and removed or concealed the proceeds by diverting them to insiders DDF and DDI; and

(f) The proceeds of the Transfer were transferred to DDF, an insider of Mr. Jones.

16. The Transfer is unlawful and avoidable under T.C.A. § 66-3-305(a)(1) because Mr. Jones, his agents Mark Johnson and Todd Stockwell, Mark Fischer, and FV have acted with intent to hinder, delay, and defraud Regions. The conduct of Mr. Jones, FV, and Mr. Fischer was fraudulent, intentional, and malicious.

17. FV is not entitled to any reduction of liability or any lien against the DDF Stock because it has not acted in good faith.

## II. LEGAL ARGUMENT

A. **The Transfer Violates T.C.A. § 66-3-305 (a)(1).**

The facts as set forth above demonstrate that the Transfer violates T.C.A. § 66-3-305(a)(1) because Mr. Jones had actual intent to hinder, delay, and defraud Regions. Mr. Jones refused to answer a direct question in his deposition as to his intention, so he is precluded from further testimony on that issue. In determining actual intention, the court is directed to consider the following factors:

(b) In determining actual intent under subdivision (a)(1), consideration may be given, among other factors, to whether:

(1) The transfer or obligation was to an insider;

(2) The debtor retained possession or control of the property transferred after the transfer;

(3) The transfer or obligation was disclosed or concealed;

(4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) The transfer was of substantially all the debtor's assets;

(6) The debtor absconded;

(7) The debtor removed or concealed assets;

(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

T.C.A. § 66-3-305(b). Most of these "badges of fraud" exist here.

Control: Under the Stock Sale Contract, Mr. Jones retains 49% of the DDF Stock, the ability to repurchase what he is selling, and control of the company itself, which normally would go to a holder of a majority of the shares.

Concealment. Mr. Jones shipped the Certificate away the day before his deposition to an out-of-state lawyer.

Suit. Mr. Jones executed the Stock Sales Contract and sent the Certificate away the day before Regions was set to execute on its Judgment and well after Regions had sued and obtained judgment.

Removing or Concealing Assets. Mr. Jones moved the Certificate out of state and caused the proceeds of sale of the DDF Stock to be diverted from himself into DDF, an insider, and then to DDI, also an insider.

Value. Mr. Jones made no counter-offer to the $250,000 price proposed by FV and had another buyer interested in paying $1,000,000 for the same asset.

Insolvent. Mr. Jones is failing to pay his debts as they come, which creates the presumption of insolvency. T.C.A. § 66-3-303(b).

Essential Assets. Mr. Jones is transferring 51% of the DDF Stock to FV, who is in turn transferring proceeds to DDF, an insider of Mr. Jones.

**B.    The Transfer Is Avoidable, and Regions Is Entitled to Injunctive Relief.**

Regions is entitled to injunctive relief under T.C.A. § 66-3-308, which states:

66-3-308.  Remedies of creditors.

>   (a)  In an action for relief against a transfer or obligation under this part, a creditor, subject to the limitations in § 66-3-309, may obtain:
>
>   (1)   Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;
>
>   (2)   An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by title 26;
>
>   (3)   Subject to applicable principles of equity and in accordance with applicable rules of civil procedure:
>
>   (A)    <u>An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property</u> (emphasis added);
>
>   (B)    Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or
>
>   (C)    Any other relief the circumstances may require.
>
>   (b)  If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.

**C.  Regions Is Subject to Immediate, Irreparable Harm.**

Mr. Jones's insolvency is not only a badge of fraud under T.C.A. § 66-3-305(b); it is also a basis for injunctive relief because it has long been recognized that a creditor pursuing an insolvent debtor faces irreparable harm if it is denied recovery from an available asset. *See Teamsters Freight Local Union No. 480 v. Southern Forwarding Company*, 424 F. Supp. 11 (M.D. Tenn. 1976), *citing Railroad v. Greer*, 87 Tenn. 698, 11 S.W. 931 (1889).

**D.  Regions Is Entitled to a Temporary Restraining Order and to a Preliminary Injunction Under Rule 65 of the Federal Rules of Civil Procedure.**

Because Regions has a right to injunctive and other relief under T.C.A. § 66-3-308, and because Regions is subject to immediate and irreparable harm, Regions is entitled under Rule 65(a) and (b) of the Federal Rules of Civil Procedure to a Temporary Restraining Order and to a Preliminary Injunction because: (a) Regions has a substantial likelihood of prevailing on the merits, (b) there is no adequate remedy at law and it will suffer immediate and irreparable harm if the injunction is not granted, (c) there is no risk of substantial harm to the defendants, and (d) public policy favors the avoidance of actual fraud. *Gaines v. NCAA*, 746 F. Supp. 73 (M.D. Tenn. 1976).

February 29, 2012.                    Respectfully submitted,

                                      s/Robert C. Goodrich Jr.
                                      Robert C. Goodrich Jr. (Sup. Ct. No. 10454)
                                      J. Patrick Warfield (Sup. Ct. 030502)
                                      STITES & HARBISON PLLC
                                      401 Commerce Street, Suite 800
                                      Nashville, TN 37219-2490
                                      (615) 782-2231     Fax: (615) 742-4126
                                      robert.goodrich@stites.com
                                      patrick.warfield@stites.com

                                      *Attorneys for Regions Bank*